# CHARLESTON.

State *v.* Fred Vandetta

(No. 6380)

Submitted November 19, 1929.   Decided November 26, 1929.

278

*L. C. Musgrave,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

WOODS, PRESIDENT:

The indictment in this case is for a felony for a second offense under section 3, Chapter 32-A, Code, and was returned at the September 1927 term of the criminal court of Marion county. It charges that Fred Vandetta, within one year next before the day of the finding of the indictment, "did unlawfully and feloniously then and there, have in his possession a quantity of moonshine liquor", etc.; and also, as the prior offense upon which the felony is predicated, that Vandetta

was convicted, upon confession, before a justice of the peace of Marion county, on the 30th day of January, 1918, of unlawfully manufacturing, etc., intoxicating liquors as defined by section 1 of Chapter 13 of the Acts of the Legislature of West Virginia 1913, and a jail sentence of three months and a fine of $200.00 imposed. Vandetta was found guilty of the felony as charged, and sentenced to serve a term of two years in the penitentiary. It is to the judgment of the circuit court of Marion county in refusing him a writ of error that the present writ is prosecuted.

The indictment on its face is sufficient under the statute. *State* v. *Bevins*, 94 W. Va. 344; *State* v. *Vandetta*, 86 W. Va. 186; *State* v. *Hoilman*, 82 W. Va. 98.

Plaintiff in error insists that it was error for the trial court, on motion of the state, to strike out his special plea in writing. The plea sets up the fact that he had been previously indicted and convicted of a second offense (a felony), under section 3, Chapter 32-A, Code, in the criminal court of Marion county in 1923, and that the former conviction recited in the indictment in the instant case for the purpose of raising the offense to a felony was used in 1923 to predicate the indictment for felony; and that the felony of which he was indicted and convicted as aforesaid and the felony of which he is now indicted are one and the same, and not different felonies. It is argued in this Court that the statute nowhere contemplates any subsequent offense, and therefore that, when Vandetta was discharged from the penitentiary, the misdemeanor conviction in 1918 could not be alleged in the indictment in the instant case for the second felony conviction.

Statutes which authorize a more severe penalty to be inflicted upon one convicted of a second offense have been generally held by the courts of this country to be constitutional, and not objectionable upon the ground that they put the accused twice in jeopardy for the same offense. 16 C. J. p. 1339. See note, 18 Anno. Cas. 924. The increased punishment is not for the first, but for the subsequent, offense; the penalty merely being enhanced in the latter instance, because the prisoner has placed himself in a class which has to be dealt with more severely than the class of ordinary criminals.

In other words, such statutes are based on the theory that the former punishment has been inefficacious in doing the work of reform for which it was designed. The accused is not required to answer the former charge and defend against it. Nothing is heard in reference to the former trial save the one of conviction. For a plea of former jeopardy to avail, it must appear that, in each prosecution, the accused, the sovereignty whose law has been violated, and the offense not only as to the act but as to the crime, are identical. So, the fact that the indictment charges a former conviction of another and entirely different offense, is not charging him with an offense with respect of the former in the case in hand. The averments as to the former offense go as to the punishment only. *Rand* v. *Commonwealth*, 9 Gratt. 738.

But, the defendant further contends that Chapter 32-A, section 3, Code, providing ''upon conviction of the same person for the second offense under this act, he shall be guilty of felony and be confined in the penitentiary not less than one nor more than five years'', does not contemplate an offense other than a second offense. Once established, as here, would not future offenses be of the same higher degree? The very reason we have heretofore given for the enactment of the statute would compel an affirmative answer to this question. It was clearly within the intent of the lawmakers when this provision was enacted, although it did not expressly make provision for subsequent offenses. However, this Court has spoken on the precise issue here in the case of *State* v. *Brown*, 91 W. Va. 187. That case involved the construction of a similar provision in Code, Chapter 148, section 7, concerning the carrying of revolvers. This statute provides that upon a conviction for the second offense the accused shall be guilty of a felony. Brown was convicted of a second offense and was sentenced to a term in the penitentiary. Thereafter he again violated the statute, and was again sentenced to the penitentiary under an indictment for felony. On regaining his freedom, he again violated the statute. The State alleged the two previous convictions for a felony and upon his conviction, under the provisions of section 24 of Chapter 152 of the Code, the Court imposed a life sentence of imprisonment. On appeal this

Court held that the statute under which this sentence was inflicted contemplated two previous sentences made felonious on account of their character, and not on account of the character of the offender as disclosed by his conduct. However, Brown was remanded to the circuit court to receive such sentence of confinement in the penitentiary, within the limits prescribed by law, of from one to five years. In view of all this the special plea was properly rejected by the trial court.

The admission of the testimony of the patrolman Daugherty is charged to be error on the ground that he was not armed with a search and seizure warrant. This officer on making his usual rounds of that part of the city in the vicinity of Fifth Street observed a light through a partly open door in a garage opening into an alley, which connected with the street, heard voices therein, noticed bright cans shining and heard a noise such as is made by setting a can down after it has been emptied of its contents, and smelled the strong odor of moonshine liquor. Thereupon he opened the door and stepped in. The scene which met his eyes is graphically described, as follows: ''In the center of the garage stood Fred Vandetta with a gallon jug of moonshine, bent over this way, pouring into a pint bottle. Another party was holding the bottle and funnel. Another fellow was over here with a flash light.'' Eight five-gallon square tin cans, of the character ''usually used'' in that locality ''to put moonshine liquor in'', and sixty-four jugs, of which number thirty-four were full of moonshine liquor, and two crates of pint bottles, were setting around on the floor of the garage nearby: What happened, so far as the defendant is concerned, after the officer's entry can best be told in the latter's own words: ''When I stepped in, he set the jug down and said, 'My God! Daugherty, what will I do?' I said, 'Fred, I played you generous or square, always treated you right. If I catch you, it is my laugh; and if I beat you to it, it is yours! We go down to the police station.' He said, 'Whatever you say'. That is about all the conversation we had.'' This testimony was properly admitted. There was no need for a search warrant. The officer was in the lawful discharge of his duty at the time, when his senses disclosed the contraband subject matter

and led to a *bona fide* belief that the law was being violated within the garage. *State* v. *Thomas,* 105 W. Va. 346.

Another assignment of error goes to evidence admitted at the instance of the State tending to impeach the testimony of witness Nance. This witness, who was one of the trio arrested in the garage, was shown to have made statements to the officers following his arrest at variance with those made on the trial. The objection to this impeaching testimony is bottomed on the fact that the defendant Vandetta was not present at the time the contradictory statements were made. Had these statements been put in evidence as admission of an accomplice, there would have been merit in the objection. Here, however, it was proper for the purpose of discrediting the witness. Being admissible for any purpose under a general objection, and in the absence of a motion to limit it, its admission was not error. *Rodgers* v. *Engineering Co.,* 101 W. Va. 1; 38 Cyc., p. 1381.

The last assignment of error deals with the instructions. The defendant's complaint is narrowed to the giving of number three for the State and the refusing of number three requested by the defendant. The former instructs the jury as to the weight that should be given to the testimony of a witness in a trial of a case, where he makes statements in material matters touching the issue inconsistent with former statements made by him concerning the same matters. This instruction, identical in language, was sustained in *State* v. *Trail,* 59 W. Va. 175. By the one refused, the defendant asked the court to instruct the jury ''that all the instructions given in this case, both for the state and for the defendant, are instructions of the court, and they must be considered as a whole by the jury in arriving at a verdict.'' While this is a correct statement of the law, it is open to the objection of being abstract, but even were it free from objection, in view of the prodigal giving of instructions by the trial judge, at the instance of the defendant, we cannot say that he was prejudiced by its rejection.

The judgment is affirmed.

*Affirmed.*