Barlow, J.
 

 The only question in this case is whether there was a lawful seizure of the slot machines so that they could properly be received in evidence. The state contends that the
 
 *377
 
 officers were lawfully on the premises under sec. 139.06, Stats., which provides as follows:
 

 “The state treasurer or his duly authorized employees, and any sheriff, policeman, marshal, or constable, within their respective jurisdictions, may at all reasonable hours enter in and upon any licensed premises, and examine the books, papers and records of any brewer, bottler, sales company, wholesaler, or retailer, for the purpose of inspecting the same and determining whether the tax imposed by this chapter has been fully paid, and shall have power to inspect and examine, according to law, any premises where fermented malt beverages are manufactured, sold, exposed for sale, possessed or stored, for the purpose of inspecting the same and determining whether the tax imposed by this chapter has been fully paid, and shall have power to inspect and examine, according to law, ■any premises where fermented malt beverages are manufactured, sold, exposed for sale, possessed or stored, for the purpose of determining whether the provisions of this chapter are being complied with. . . .”
 

 Appellant does not question the right of officers to enter the premises and inspect malt beverages and intoxicating liquors for the purpose of determining whether the tax has been paid, but contends that the officers are now using this statute as a subterfuge and that they did not enter the premises to inspect the malt beverages and intoxicating liquors for tax payment but that the search was made for the specific purpose of seizing slot machines and gambling devices if there were any on the premises.
 

 On cross-examination the sheriff testified that the district attorney came to his office and showed him an anonymous letter stating that slot machines were being operated on these premises and directed him to take some assistants and make a regular routine inspection. We are fully aware of the guarantee against unreasonable search and seizure provided in the Fourth amendment to the federal constitution and the
 
 *378
 
 almost identical language used in sec. 11, art. I, of the constitution of Wisconsin, and approve the language used in
 
 Glodowski v. State
 
 (1928), 196 Wis. 265, 268, 220 N. W. 227, that—
 

 “Until the people shall see fit to change this constitutional mandate, each department of government must give full force and effect to this command of the people, even though it may seem at times to render more difficult the apprehension and punishment of those who violate the laws of the state. The preservation of the rights guaranteed by the constitution is of greater moment than the detection of any crime or the punishment of any single offender.”
 

 If appellant had used these premises as his private home or residence, and for no other purpose, this search would have been unlawful without a search warrant, but the premises were used for business purposes. He operated a restaurant where people could obtain meals and the public had a right to enter and eat, and also operated a tavern where the public, or at least those of lawful age, had a right to enter for the purpose of patronizing this business. In order to carry on the retail sale of malt beverages and intoxicating liquors it is necessary, under secs. 66.05 (10) and 176.04 (1), Stats., to obtain a license, and as a condition of this license police officers have a right to enter the place to inspect the premises for the purpose of determining whether the provisions of ch. 139, Stats., are being complied with. • Under sec. 139.06 the officers had a lawful right to enter the premises and were lawfully there. This being a place of business where any person had a lawful right to enter, officers could properly enter without being trespassers.
 
 Ludwig v. United States
 
 (7th Cir. 1924), 3 Fed. (2d) 231. Hence, there can be no question about their being lawfully on the premises. This brings us to the question of the rights and authority of officers after they have rightfully entered. Where an officer lawfully enters a place of business open to
 
 *379
 
 himself as well as other members of the public he may seize illegally kept property without a search warrant or warrant for the arrest of the offender.
 
 Elder v. Camp
 
 (1942), 193 Ga. 320, 18 S. E. (2d) 622.
 

 Counsel for appellant places great stress upon the fact that prior to going to the premises the officers knew of an anonymous letter stating that slot machines were being operated there. We are unable to see where this deprives them of the right to make an inspection. Assuming the officers had gone to this place and no anonymous letter had been written and these machines were discovered, no' one would seriously contend that they had no right to seize them. Being on the premises lawfully it is not only the right of an officer but his duty to seize property being used for illegal purposes in his presence.
 
 People v. Williams
 
 (1926), 234 Mich. 361, 208 N. W. 457. Counsel, of course, assumes that if they had not received this letter they would not have made this inspection. Whatever their motive may have been they had a right to make the inspection, and it is proper to say that whenever an inspection is made it is the intention of the officer at the time he makes it to seize any property used for unlawful purposes in his presence. Under the rule that where an officer has lawfully entered premises a seizure of illegally used or kept property is valid and may be used in evidence,
 
 Paper v. United States
 
 (4th Cir. 1931), 53 Fed. (2d) 184;
 
 United States v. Two Soaking Units
 
 (2d Cir. 1931), 48 Fed. (2d) 107, it is considered that the officers had a right to seize the slot machines in question and that they could properly be received in evidence.
 

 It is also contended that ten of the slot machines being in a separate locked room and not set up for operation were improperly seized and should not be confiscated or received in evidence. They were in an adjacent room. The evidence shows that the machines could have been set up at any time and were in condition to be operated. They were on the li
 
 *380
 
 censed premises which the officers had a right to inspect. The learned trial judge disposes of this contention in the following language:
 

 “The presence of machines in an adjacent room was clearly a part of the plan or scheme to violate the law. It is the opinion of the court that the unexplained presence of gambling devices under such circumstances was illegal. In other words, this court holds that slot machines cannot be legally owned or possessed under such circumstances. Their presence in the building under such circumstances leads to the considered conclusion that they were kept there for gambling purposes, a part of the general purpose or scheme. See
 
 State v. Falgren,
 
 223 N. W. 455, 176 Minn. 346. It follows that the seizure of these machines was justified.”
 

 We approve this language and the conclusion reached.
 

 By the Court.
 
 — Judgment affirmed.